UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTHONY BINSACCA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 18-cv-03640-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16 |

Plaintiff Anthony Binsacca seeks social security benefits for physical and mental impairments including chronic pain, neuropathy, migraines, anxiety, post-traumatic stress disorder ("PTSD"), insomnia, cervical radiculopathy, sciatica, lumbago, and depression. (*See* Administrative Record ("AR") 214.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his benefits claim. (Dkt. No. 1.)[1] Before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 15 & 16.) Because the Administrative Law Judge's ("ALJ's") determination that Plaintiff's diagnosed fibromyalgia is not a medically determinable impairment constitutes reversible error, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross motion, and REMANDS for further proceedings.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

---

[1] Record citations outside of the administrative record are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3 & 10.)

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* A court "must consider the entire record as a

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In March 2013, Plaintiff filed for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, (AR 189-95). Plaintiff alleged disability beginning on April 19, 2011. (AR 214.) His application was denied initially and on reconsideration. (AR 124-28, 130-35.) Plaintiff then requested a hearing before an ALJ. (AR 159.) On January 11, 2017, ALJ Arthur Zeidman held a hearing during which both Plaintiff and vocational expert ("VE") Ann Wallace testified. (AR 33-78.)

**I.      The ALJ's Findings**

On April 28, 2017, the ALJ issued a written determination denying Plaintiff's claims, finding that Plaintiff was not disabled within the meaning of the Social Security Act based on the testimony and evidence and using Social Security Administration's five-step sequential evaluation process for determining disability. (AR 15-28.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 19, 2011, the alleged onset date, "through his date last insured of December 31, 2016." (AR 17.) At step two, the ALJ determined that the medical evidence indicated that Plaintiff's "left shoulder impairment" and depression constitute "severe impairments." (*Id.*) The ALJ characterized those impairments as "severe" because they "significantly limit the claimant's ability to perform basic work activities." (*Id.*) The ALJ concluded, however, that Plaintiff's "other medically determinable impairments including pancreatitis, irritable bowel syndrome, and migraines" and "any other medically determinable impairments" were not severe because they did not represent, "either singly or in combination with everything else, more than a minimal limitation" on Plaintiff's ability "to perform basic work activities." (AR 17-18.) Further, the ALJ concluded at step two that Plaintiff's alleged fibromyalgia was a "non-medically determinable impairment as directed by [Social Security Ruling ("SSR")] 12-2p." (AR 18.)

At the third step, the ALJ determined that Plaintiff "did not have an impairment or a

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 CFR 404.1520(d), 404.1525, and 404.1526).) In reaching that conclusion, the ALJ noted that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (AR 18.)

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform "light work," but "was limited to no more than occasional public contact and performing simple, routine tasks." (AR 20.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce [Plaintiff's] alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence explained in [the] decision." (AR 23.) In making that determination, the ALJ noted that Plaintiff's alleged physical limitations related to his "neck and spine impairments" were not consistent with "the objective imaging evidence and his nerve conduction studies." (*Id.*) Further, the ALJ found that the medical evidence did not support Plaintiff's "allegations of difficulty ambulating" or his alleged mental limitations. (AR 23-25.)

As for the medical opinion evidence, the ALJ afforded "great weight" to the opinion of examining psychologist Dr. Dixit. (AR 24.) Dr. Dixit opined that Plaintiff had moderate limitations in his ability to "[m]aintain emotional stability" and interact with co-workers, supervisors, and the public. (AR 411.) Dr. Dixit also found mild to moderate limitations in Plaintiff's ability to remember complex instructions and "[m]aintain adequate pace or persistence to perform complex tasks." (*Id.*) Dr. Dixit further opined that Plaintiff had mild limitations in maintaining adequate concentration and performing required tasks. (*Id.*) The ALJ likewise afforded "great weight" to the opinions of the "state agency psychological consultants," whose findings were "generally consistent with the opinion of Dr. Dixit." (AR 25.)

The ALJ afforded "little weight" to the opinion of Plaintiff's treating psychologist, Dr. Carla Haimowitz. Dr. Haimowitz assessed Plaintiff as "truly disabled" due to "constant,

4

intractable pain," depression, fatigue, impaired memory and concentration, and PTSD. (AR 25; *see also* AR 336, Ex. 2F at 1-6.) The ALJ discounted Dr. Haimowitz's findings regarding Plaintiff's physical impairments, noting that Dr. Haimowitz is "not a medical doctor," and "although [she] regularly saw [Plaintiff] for sessions, she was not familiar with his actual functional abilities." (AR 25.) The ALJ next considered the opinion of examining physician Dr. Calvin Pon and afforded it "some weight," noting that the physical limitations found by Dr. Pon were "not entirely consistent with the medical evidence of record" including past "normal physical exams" and "objective imaging evidence." (AR 25.) Likewise, the ALJ afforded "some weight" to the opinions of the "state agency medical consultants" because the opinions were inconsistent with Plaintiff's "ability to play guitar all day," past "normal physical exams," and objective imaging evidence. (AR 26.)

The ALJ concluded the step-four analysis by finding that Plaintiff is unable to perform his past relevant work because "his limitation to simple, repetitive tasks precludes all of the claimant's past skilled work." (AR 26-27.) At step five, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" based on his "age, education, work experience, and residual functional capacity" to perform "unskilled light work." (AR 27-28.) In sum, the ALJ concluded that Plaintiff "was not under a disability, as defined by the Social Security Act, at any time from August 19, 2011, the alleged onset date, through December 31, 2016, the date last insured."

## II.     The Appeals Council

On June 21, 2017, Plaintiff requested review of the ALJ's decision. (AR 187.) The Appeals Council denied Plaintiff's request for review on April 20, 2018, making the ALJ's decision final. (AR 1-5.)

## III.    This Action

Plaintiff commenced this action for judicial review on June 19, 2018, pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Plaintiff then moved for summary judgment, (Dkt. No. 15), the Commissioner filed her cross-motion, (Dkt. No. 16), and Plaintiff filed his reply, (Dkt. No. 17).

//

United States District Court
Northern District of California

**DISCUSSION**

Plaintiff asserts that the ALJ committed reversible error by: (1) finding at step two that fibromyalgia is not a medically determinable severe impairment; (2) discrediting Plaintiff's statements regarding his symptoms and resulting limitations; (3) discrediting the third-party function report from Plaintiff's spouse; and (4) failing to appropriately weigh the medical opinion evidence.[3] The Court agrees that the ALJ committed reversible error at step two; further, that error is related to Plaintiff's additional arguments because it affected the ALJ's analysis of Plaintiff's testimony, the third-party function report from his wife, and the medical opinion evidence. Plaintiff's step-two argument is thus dispositive and the Court need not address the additional arguments.

## I. Step-Two Determination Regarding Fibromyalgia

It is the claimant's burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); *see also* 20 C.F.R. § 404.1508 (providing that claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, that the step-two inquiry is a "de minimis screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal quotation marks and citation omitted).

Plaintiff challenges the ALJ's finding that Plaintiff's diagnosed fibromyalgia is a "non-medically determinable impairment." (*See* AR 18 (citing Social Security Ruling ("SSR") 12-2P).) Plaintiff argues that the ALJ's conclusion that "other conditions were not sufficiently excluded as the cause of [Plaintiff's] symptoms" is contradicted by the medical evidence of record and

---

[3] Plaintiff's motion also asserts that the ALJ "failed to meet his burden at step five" in determining "that there were a significant number of jobs that [Plaintiff] could perform given his [RFC]." (Dkt. No. 15 at 25.) However, Plaintiff's reply does not repeat this argument. (*See generally* Dkt. No. 17). Further, given that the ALJ's failure to find that Plaintiff's diagnosed fibromyalgia is a medically determinable impairment at step two is dispositive, the Court need not address Plaintiff's step-five argument.

6

contrary to the guidance set forth in SSR 12-2P. The Court agrees.

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal quotation marks and citation omitted). Symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with [the] disease." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Individuals suffering from fibromyalgia have normal "muscle strength, sensory functions, and reflexes." *Revels*, 874 F.3d at 656. Further, "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Fibromyalgia is thus "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* The Commissioner utilizes criteria set forth in SSR 12-2P in evaluating fibromyalgia. As the Ninth Circuit has explained:

> [SSR 12-2P] provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. [SSR 12-2P, at *2.] Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. *Id.* at *2-3. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Revels*, 874 F.3d at 656-57.

Here, the ALJ's step-two determination notes that Plaintiff "alleges an impairment from fibromyalgia." (AR 18.) The ALJ then discusses SSR 12-2P, noting that it "expressly states that [an ALJ] 'cannot rely' upon a physician's diagnosis alone but can only find fibromyalgia to be a medically determinable impairment when there is both a diagnosis and the elements of either the 1990 or 2010 ACR diagnostic criteria are met." (*Id.*) The ALJ's decision then cites the third

7

factor of both the 1990 Criteria and the 2010 Criteria—requiring "evidence that other disorders are not accounting for the pain"—and finds that because "other conditions were not sufficiently excluded as the cause of [Plaintiff's] symptoms," fibromyalgia is "a non-medically determinable impairment as directed by SSR 12-2[P]." (*Id.*)  In making that determination, the ALJ cites no treatment records or medical opinions.

The ALJ's determination is not supported by substantial evidence of record and is instead contradicted by the treatment records.  First, neurologist Jennifer Ault, M.D., examined Plaintiff on October 23, 2015 for complaints of "chronic pain." (AR 424.)  In addition to chronic pain, Plaintiff reported poor memory and depression. (*Id.*)  Dr. Ault conducted a full physical examination and found tenderness in 16 of 18 points on Plaintiff's body.  (AR 428.)  Dr. Ault also reviewed Plaintiff's bloodwork from June 2015 and MRIs from July 2015. (*Id.*)  Dr. Ault's assessment states, in pertinent part: "Etiology of chronic pain is not entirely clear.  Suspect attributed to a more widespread pain disorder/fibromyalgia given normal imaging." (*Id.*)  Dr. Ault's diagnoses include a primary diagnosis of fibromyalgia. (AR 429.)  Despite this evidence, the ALJ's step-two determination regarding fibromyalgia does not reference Dr. Ault's October 2015 findings.

Second, rheumatologist Molly Magnano, M.D., examined Plaintiff on May 19, 2016 for chief complaints of pain and "brain fog." (AR 464.)  Plaintiff reported "wide spread [sic] muscle, tendon and [joint] pain that varies day by day," as well as "brain fog, difficulty remembering, . . . [abdominal] pain, diarrhea, and very low energy." (*Id.*)  The report notes that Plaintiff "is taking [L]yrica for fibromyalgia but cannot afford the $30 co-pay this week so has been off for a few days." (*Id.*)  Dr. Magnano conducted a physical examination and found 8 of 18 points of tenderness, and she also reviewed Plaintiff's bloodwork and MRIs.  (AR 465-67.)  Dr. Magnano diagnosed Plaintiff with fibromyalgia, "find[ing] no evidence of an autoimmune disorder." (AR 467.)  Again, the ALJ's step-two determination does not reference Dr. Magnano's findings.  The ALJ's failure to acknowledge Dr. Magnano's diagnosis of fibromyalgia at step two is especially troubling given that "[r]heumatology is the relevant specialty for fibromyalgia" and such "[s]pecialized knowledge may be particularly important with respect to a disease such as

fibromyalgia." *See Benecke*, 379 F.3d at 594 n.4.

Third, neurologist Timothy Lo, M.D., examined Plaintiff on July 27, 2016, noting that Plaintiff had previously been under Dr. Lo's "care for chronic pain management." (AR 567.) Dr. Lo noted Plaintiff's "history of fibromyalgia." (*Id.*) In addition to "relatively constant" pain, Plaintiff reported "frequent depression and anxiety," "frequent night sweats, severe fatigue, headaches, blurry vision," and "poor concentration," among other ailments. (AR 568-69.) Dr. Lo conducted a physical examination and noted "tenderness to palpation diffusely over the cervical, mid-thoracic, and lumbar paraspinal muscles," as well as "diffuse joint tenderness without evidence of swelling or erythema." (AR 569-70.) Dr. Lo diagnosed Plaintiff with fibromyalgia, noting that Plaintiff "was diagnosed with fibromyalgia by prior evaluators, rheumatologists, and [underwent] rheumatological workup and did not have evidence of inflammatory arthritides." (AR 570.) Dr. Lo further noted that Plaintiff "does continue to have functional limitations due his ongoing chronic pain complaints." (*Id.*) Dr. Lo saw Plaintiff for a follow-up one month later and repeated his diagnosis of fibromyalgia. (AR 573.) As with the treatment records of Dr. Ault and Dr. Magnano, the ALJ's step-two determination does not reference Dr. Lo's findings.

In sum, the record reflects that three of Plaintiff's treating physicians—two neurologists and a rheumatologist—diagnosed Plaintiff with fibromyalgia after conducting physical examinations, considering Plaintiff's subjective complaints, and reviewing Plaintiff's medical history. Dr. Ault and Dr. Magnano also reviewed Plaintiff's bloodwork and MRIs. In rendering their diagnoses, each physician either explicitly or implicitly ruled out other conditions as the source of Plaintiff's chronic pain. (*See, e.g.*, AR 429 (attributing symptoms to fibromyalgia based on "normal" MRIs); AR 467 (diagnosing fibromyalgia and noting "no evidence of an immune system disorder); AR 570 (diagnosing fibromyalgia and noting prior "rheumatological workup" revealing no "evidence of inflammatory arthritides").)

Despite three diagnoses of fibromyalgia and the "de minimis" nature of the step-two inquiry to dispose of "groundless claims," *see Edlund*, 253 F.3d at 1158, the ALJ determined that Plaintiff's fibromyalgia was "a non-medically determinable impairment" because "other conditions were not sufficiently excluded as the cause of [Plaintiff's] symptoms," (*see* AR 18).

9

The ALJ's determination not only sets a higher legal standard than required at step two, it is contradicted by substantial evidence of record demonstrating that Plaintiff's diagnoses of fibromyalgia satisfied the guidance set forth in 12-2P. Simply put, the record was sufficient for the ALJ to find at step two that not only is Plaintiff's diagnosed fibromyalgia a medically determinable impairment, it is arguably a severe impairment. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting that at step two an impairment "can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work'") (quoting SSR 85-28).

Defendant argues that "any error at step two was harmless on this record because the ALJ considered Plaintiff's impairments and limitations in subsequent steps of the sequential evaluation process." (Dkt. No. 16 at 9.) Defendant is wrong for two reasons. First, an ALJ is required to consider only *medically determinable* impairments, both severe and non-severe, when assessing a plaintiff's RFC. *See* 20 C.F.R. § 416.945(a)(2) (requiring an ALJ to consider all "medically determinable impairments" when assessing residual functional capacity). Indeed, the ALJ's step-four analysis of Plaintiff's RFC states, in pertinent part: "As required by SSR 96-8p, the residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [Plaintiff's] *medically determinable impairments*." (AR 20 (emphasis added).)

Second, the ALJ does not address the specific findings of Dr. Ault, Dr. Magnano, or Dr. Lo regarding Plaintiff's diagnosed fibromyalgia or otherwise discuss limitations caused by fibromyalgia *anywhere* in his decision, let alone at step four. *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless error where ALJ failed to consider bursitis at step two but "extensively discussed" bursitis at step four). In discrediting Plaintiff's testimony regarding his symptoms, the ALJ expressly considered only Plaintiff's "medically determinable impairments." (AR 20, 23.) Further, in discrediting the third-party function report from Plaintiff's wife, the ALJ found:

> [H]er reports of [Plaintiff's] functioning are not entirely consistent with the objective imaging evidence of [Plaintiff's] spine, [his] normal physical examinations, or his normal mental status exams

10

throughout the relevant period.

(AR 26.) The ALJ's reliance on "objective imaging" and "normal" examinations to discount the third-party function report demonstrates that the ALJ did not consider limitations caused by Plaintiff's diagnosed fibromyalgia, a condition that is "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *See Benecke*, 379 F.3d at 590. Similarly, the ALJ's discussion of the medical opinion evidence cites inconsistencies between the opinions of Dr. Pon and the state agency medical consultants and "objective imaging evidence" and "normal physical exams." (*See* AR 25-26.)

The ALJ's error in finding that fibromyalgia was not a medically determinable impairment at step two infected his analysis at subsequent steps of the sequential evaluation because the ALJ clearly did not consider the limitations caused by Plaintiff's diagnosed fibromyalgia. Thus, the ALJ's error was not harmless because it was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal quotation marks and citation omitted); s*ee also McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (noting that remand is appropriate "where the circumstances of the case show a substantial likelihood of prejudice" to the party claiming error); *Neisinger v. Colvin*, 15-CV-01718-DWC, 2016 WL 2866260, at *6 (W.D. Wash. May 17, 2016) (finding reversible error in failing to find fibromyalgia to be a medically determinable impairment).

### III. Remand or Credit-As-True

Plaintiff asks the Court to vacate the ALJ's decision and remand "for payment of benefits" because "the record does not create a 'serious' doubt as to his disabling pain and depression." (Dkt. No. 15 at 26.) When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595. A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels*, 874 F.3d at 668

(internal quotation marks and citation omitted).

Here, there are outstanding issues that must be resolved before a final disability determination can be made because the step-two inquiry constitutes a "de minimis screening device to dispose of groundless claims," *see Edlund*, 253 F.3d at 1158, and the ALJ's failure to properly consider Plaintiff's diagnosed fibromyalgia at step two affected the subsequent analysis at steps three through five. Thus, the Court cannot conclude on the record before it that the ALJ would be required to find Plaintiff disabled if the ALJ had properly considered Plaintiff's diagnosed fibromyalgia at step two.

Accordingly, on remand the ALJ must: (1) consider Plaintiff's diagnosed fibromyalgia a medically determinable impairment at step two; (2) assess whether Plaintiff's fibromyalgia is a "severe" impairment; and (3) appropriately analyze the impairments and limitations caused by Plaintiff's fibromyalgia—regardless of severity—at subsequent steps of the sequential evaluation, including as it relates to Plaintiff's lay testimony, the third-party function report from Plaintiff's spouse, and the medical opinion evidence.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 15 and 16.

**IT IS SO ORDERED.**

Dated: July 15, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

12